**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KATHY JEAN JOHNSON,**

                Plaintiff,            6:12-cv-1273
                                                      (GLS)
                v.

**CAROLYN W. COLVIN,**
Acting Commissioner of
Social Security,

                Defendant.
_____
**APPEARANCES:**                             **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Legal Services of Central New York     CHRISTOPHER CADIN, ESQ.
472 South Salina Street
Suite 13007
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN        KATRINA M. LEDERER
United States Attorney                     Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Kathy Jean Johnson challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Johnson's arguments, the Commissioner's decision is reversed and remanded for further administrative proceedings.

### II. Background

On July 1, 2009, Johnson filed an application for SSI, and, on August 28, 2009, she filed an application for DIB under the Social Security Act ("the Act"), alleging disability since May 1, 2007. (Tr.[1] at 58, 59, 112-119, 120-126.)[2] After her applications were denied, (*id.* at 60-67), Johnson

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 7.)

[2] The court notes an inconsistency in the record. The Application Summary for Disability Benefits lists an onset date of May 1, 2007, (Tr. 112, 120), but the Disability Report, Form SSA-3368, upon which the ALJ appears to have relied, lists an onset date of May 29, 2009, (*id.* at 22, 170-71). Further, a footnote in Johnson's brief states that the Disability Report indicates May 29, 2007 as the alleged onset date. (Dkt. No. 9 at 1 n.1.) Given the issues before the court, however, this inconsistency is of no moment.

requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 68), which was held on January 18, 2011, (*id.* at 31-47). On March 18, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-3, 19-30.)

Johnson commenced the present action by filing her complaint on August 14, 2012, wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 6, 7.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 9, 12.)

### III. **Contentions**

Johnson contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 9 at 11-25.) Specifically, Johnson claims that the ALJ erred in: (1) failing to reopen her prior claim; (2) failing to develop the administrative record; (3) determining that some of Johnson's impairments were not severe; (4) determining her residual functional capacity (RFC); (5) failing to correctly assess Johnson's credibility; and (6) finding that Johnson could perform

3

past relevant work. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 12 at 1-16.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 9 at 2-8; Dkt. No. 12 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

**A. Reopening of Prior Claim**

First, Johnson contends that the ALJ's decision not to reopen a prior

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the Regulations governing SSI are omitted.

4

decision denying her claim for DIB, issued February 13, 2013, is subject to judicial review.[4]  (Dkt. No. 9 at 23.)  Specifically, Johnson argues that the ALJ constructively reopened her prior claim by determining that "the additional evidence [submitted by Johnson] was not material and other good cause was not established."  (*Id.*; Tr. at 23.)  The court disagrees.

Generally, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits.  *See Califano v. Sanders*, 430 U.S. 99, 107-09 (1977).  The Second Circuit has noted that there are two exceptions to this general rule: federal courts may review the Commissioner's decision not to reopen a prior determination only "where the Commissioner has constructively reopened the case" or "where the claimant has been denied due process."  *Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003).  A decision will be deemed to have been constructively

---

[4] A previous denial of SSI benefits is not at issue.  Under the Regulations, a determination of a claim for SSI benefits may be reopened within two years of the date of the notice of the initial determination if good cause is shown.  20 C.F.R. § 416.1488(b).  Johnson previously filed claims for both DIB and SSI on June 28, 2006.  (Tr. at 51.)  These claims were initially denied on February 13, 2007.  (*Id.*)  Johnson's instant claim for SSI was filed on July 1, 2009, which is more than two years after the initial denial and, therefore, not subject to reopening.  (*Id.* at 58.)  Johnson does not dispute this.  (Dkt. No. 9 at 23.)  A determination with respect to DIB, however, may be reopened within four years of the date of the notice of the initial determination if good cause is shown.  20 C.F.R. § 404.988(b).  Johnson's instant claim was filed on August 28, 2009, which is less than four years after the initial denial of her first claims.  Thus, the ALJ could have reopened her prior claim for DIB, which is at issue here.

5

reopened "[i]f the Commissioner 'reviews the entire record and renders a decision on the merits.'" *Id.* (quoting *Malave v. Sullivan*, 777 F. Supp. 247, 251-52 (S.D.N.Y. 1991)).

Here, the ALJ determined that "additional evidence [submitted by Johnson] was not material and other good cause was not established," and declined to reopen Johnson's prior claim. (Tr. at 23.) In reaching this conclusion, it is clear that the ALJ reviewed the new evidence only to assess whether there was good cause for reopening the prior claim. Nothing in the record suggests that the ALJ ruled on the merits of that evidence. As the Second Circuit held in *Byam*, when the ALJ does not rule on the merits of evidence previously submitted, but instead reviews the evidence solely to determine whether the new evidence establishes good cause to reopen, a prior claim has not been constructively reopened. 336 F.3d at 172. Thus, Johnson's argument fails. Accordingly, the ALJ did not constructively reopen Johnson's prior denial of DIB, and the ALJ's determination is not subject to judicial review.

**B.     Failure to Develop the Record**

Next, Johnson asserts that the ALJ committed reversible error by failing to obtain additional statements from her treating sources regarding

her functional limitations. (Dkt. No. 9 at 11-14.)[5] Chiefly, Johnson contends that the ALJ erred by only giving "'some' weight to the treating physicians' opinions of Drs. [Sajid] Khan and [William] Hall, accepting an assessment as to sedentary exertional level work, while modifying the opinion as to bending/twisting at the waist without explanation, and rejecting the portions that [Johnson] 'would need to lie down at unpredictable intervals during a work shift, and would likely be absent from work about three times a month due to her impairments or treatment.'"[6] (*Id.* at 12.) The Commissioner counters, and the court agrees, that further development of the record was unnecessary. (Dkt. No. 12 at 7-9, 11-12.)

---

[5] The court notes that Johnson also argues that the ALJ did not satisfy her duty to develop the record because she failed to subpoena medical records from treating mental health providers after Johnson requested that she do so at the hearing. (Dkt. No. 9 at 14; Tr. at 34-35, 47.) However, the hearing took place on January 18, 2011, (Tr. 31), and the record shows that a subpoena was issued to Mental Health Connections on January 31, 2011, (Tr. at 106-08). It does not appear that any records were sent following the issuance of the subpoena, but a letter from Mental Health Connections, signed by primary therapist Linda Troutman-Zelows, LCSW, and dated January 6, 2011, stated that they were "unable to send psychotherapy notes and do not have a Psychiatric exam or Psychiatrists notes to send." (Tr. at 599.) Accordingly, by issuing the subpoena, the ALJ satisfied her duty to develop the record. *See Harris-Batten v. Comm'r of Soc. Sec.*, No. 05-CV-7188, 2012 WL 414292, at *7 n.10 (S.D.N.Y. Feb. 9, 2012) (noting that a claim that the ALJ failed to develop the record would not prevail where the record contains copies of subpoenas that the ALJ issued to treating hospitals).

[6] The court recognizes that Johnson's argument appears to encompass an assertion that the opinions of her treating physicians were improperly weighed, but this contention is more properly addressed in an RFC analysis. For the reasons discussed below, however, the court need not reach this argument.

7

While the ALJ has an affirmative obligation to develop the administrative record, his duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07–cv–259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010); *see also* 20 C.F.R. § 404.1512(d) (stating that, generally, a complete record contains a "medical history for at least the [twelve] months preceding the month in which" the claimant files her application). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence. *See* 20 C.F.R. § 404.1520b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

Here, the ALJ afforded Drs. Khan and Hall only some weight because their opinions were not supported by the record evidence. (Tr. at 28.) Specifically, the ALJ discounted the treating physicians' opinions not only because Drs. Khan and Hall did not provide a rationale for their conclusions, but also because of the limited positive clinical findings in the record. (Tr. at 28-29.) Because the record was sufficiently robust for the

8

ALJ to make a disability determination, she was not obligated to further develop the record. *See Streeter v. Comm'r of Soc. Sec.*, No. 5:07-CV-858, 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011).

In this case, the record contains treatment records from various treating sources, including physicians Archana Goel, Norman Neslin, Michael Shende, Arun Dhingra, Naeem Samad, Dilip Kachare, Hall, Khan, and Nabeel El-Amir. (Tr. at 374-75, 376-80, 381-84, 385-90, 391-92, 393-423, 424-31, 493-501, 441-48.) The record also contains hospital records, emergency department records, and urgent care records. (Tr. at 253-58, 262-79, 432-33, 434-40, 449-55.) In addition, the record contains physical therapy progress notes, laboratory findings, including x-rays, urinanalyses, and an MRI, and treating physician functional assessments. (Tr. 518-28, 467, 487, 542-43, 560-61, 546-49.)

Accordingly, for the foregoing reasons, highlighted by the sufficiency of the record and the lack of any obvious gaps, the ALJ satisfied her duty to develop the record. *See Brown v. Astrue*, No. 11-CV-6392T, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012).

**C.** **<u>Severe Impairments</u>**

Johnson also contends that the ALJ erred in finding that her mental

9

impairments, gastrointestinal reflux disease (GERD), and hand impairments were non-severe. (Dkt. No. 9 at 17-20.) Specifically, Johnson argues that her "severe depression and anxiety are well documented and diagnosed," (*id.*), that her constant pain exacerbated and contributed to her anxiety and depression, and that her gastrointestinal impairments and hand and finger numbness affect her basic work activity and are severe, (*id.* at 19). The Commissioner counters, and the court agrees, that the ALJ properly determined that some of Johnson's impairments were non-severe. (Dkt. No. 12 at 9-10.)

A claimant has the burden of establishing that she has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b)(3)-(6). An ALJ's evaluation of a claimant's mental

10

impairments must reflect his application of the "special technique" set out in 20 C.F.R. § 404.1520a, which necessitates his consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)).

Here, with respect to Johnson's mental impairments, the ALJ determined that Johnson suffered no restrictions in activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. (Tr. at 26.) Thus, she concluded that Johnson's depression was not severe. (*Id.*) The ALJ based her decision, in part, on Johnson's treatment notes, which repeatedly documented normal psychiatric findings. (*Id.* at 26, 254, 283, 458, 470, 552.) The ALJ also

11

noted that, while Johnson received psychotherapy, "she missed four of her scheduled therapy sessions and has not had a psychiatric evaluation because she cancelled the appointments for such." (*Id.* at 26.)

Johnson points to diagnoses of major depression with severe psychosis, general anxiety disorder, agoraphobia, and panic disorder. (Dkt. No. 9 at 19.) However, "whether there is substantial evidence supporting the appellant's view is not the question;" instead, the court must "decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, No. 12-4186-cv, 2013 WL 3214890, at *1 (2d. Cir. June 27, 2013). Indeed, Johnson's treatment notes not only reveal normal psychiatric findings from her doctors, as the ALJ found, but also show that Johnson herself denied symptoms of depression at various points throughout her treatment. (Tr. at 493, 534, 535.) Further, in the disability report that Johnson completed, she did not list depression or anxiety as illnesses, injuries, or conditions that limit her ability to work. (*Id.* at 171.) Moreover, during an office visit in July 2010 with Johnson's treating physician, Dr. Hall, at which depression and anxiety were among Johnson's chief complaints, Dr. Hall noted that she was "alert and cooperative," had a "normal mood and affect" and a "normal attention span

12

and concentration." (*Id.* at 552.) He further noted that she was "[p]leasant, well dressed [with] good intellect and insight." (*Id.*) Johnson also reported that she was capable of handling household chores without assistance, shopping, attending college classes, taking public transportation, and reading and watching television. (*Id.* at 36, 37, 42-43, 45-46, 446, 600.) Additionally, as of January 6, 2011, Johnson cancelled two psychiatric evaluations and only attended eight out of fourteen scheduled appointments. (*Id.* at 599.) Although her diagnosis was listed as "Major Depression with severe psychosis," Johnson had not yet attended a psychiatric evaluation. (*Id.*)

With respect to Johnson's GERD, the ALJ concluded that it was non-severe because Johnson's symptoms improved after surgery. (*Id.* at 27.) Although Johnson argues that she suffers from "severe and limiting pain resulting from her gasterointestinal (sic) impairments," (Dkt. No. 9 at 19), in an August 21, 2009 follow-up appointment with Dr. El-Amir, the doctor who performed her hiatial hernia anti-reflux operation, she denied symptoms of dysphagia or reflux. (Tr. at 441.) Dr. El-Amir further noted that Johnson was "remarkably improved" and "extremely happy that she has no symptoms of reflux." (*Id.*)

13

With respect to Johnson's hand impairments, the ALJ concluded that the record was devoid of objective medical evidence to establish a medically determinable hand impairment. (*Id.* at 27.) Johnson points to, and the court appreciates, her documented medical history of Raynaud's diagnosis. (Dkt. No. 9 at 19; Tr. at 375, 381, 389, 573.) However, even assuming that the ALJ erred when he failed to acknowledge this diagnosis, that omission does not constitute reversible error because she continued with the sequential analysis and mentioned and considered Johnson's "numbness and swelling in her hands" at the RFC stage. (Tr. at 28); *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012).

Ultimately, substantial evidence supports the ALJ's determination that Johnson's mental impairment, GERD, and hand impairment were not severe. (*Id.* at 26.) Moreover, because the disability analysis continued, any error at step two is, at most, harmless. *See Tryon*, 2012 WL 398952, at *4; *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

**D.    RFC Determination**

Next, Johnson argues that the ALJ's RFC determination is tainted

with legal error because, even if not severe, her mental impairments should have been considered in the determination of her RFC.[7] (Dkt. No. 9 at 16-17.) The Commissioner does not respond to this argument, (Dkt. No. 12 at 11-14), and the court agrees with Johnson.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's mental impairments. *Id.* § 404.1545(a)(3), (4). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that Johnson retained the RFC to perform sedentary work, including the ability to lift/carry ten pounds occasionally and less than ten pounds frequently, sit six hours in an eight-hour work day, stand/walk for two hours in an eight-hour day, push/pull without

---

[7] Johnson also contends that the RFC determination was not supported by substantial evidence because the ALJ only gave some weight to, and modified the opinions of, treating physicians Drs. Hall and Khan. (Dkt. No. 9 at 14, 16.) This argument need not be addressed in light of the court's agreement with Johnson's alternative contention.

15

limitation beyond that listed for lifting/carrying, and perform minimal twisting at the waist. (Tr. at 27-29.) However, the ALJ addressed her RFC findings only to physical symptoms. (Dkt. No. 9 at 16.) Indeed, although the ALJ stated that she considered all of plaintiff's symptoms, (Tr. at 27), in the discussion that follows, the ALJ addressed only the physical limitations related to Johnson's back, without any mention of mental health symptoms, (*id.* at 28-29).

It is axiomatic that the ALJ is required to consider a plaintiff's mental impairments, even if not severe, in formulating the RFC. *See* 20 C.F.R. § 416.945(a)(4), (b); 20 C.F.R. § 416.945(a)(4); *see also Lawton v. Comm'r of Soc. Sec.*, No. 7:10-CV-256, 2010 WL 4810676, at *13 (N.D.N.Y. Nov. 2, 2010) (remanding with direction to the ALJ to discuss [the] plaintiff's mental limitations and to consider his mental abilities in formulating the RFC); *Collins v. Astrue*, No. 6:08-CV-1357, 2010 WL 786286, at *1 (N.D.N.Y. Feb. 26, 2010) (finding reversible error in the ALJ's failure to explicitly include the plaintiff's mental impairment in her RFC assessment); *Monell v. Astrue*, No. 08-CV-0821, 2009 WL 4730226, at *5 (N.D.N.Y. Dec. 3, 2009) ("The ALJ's failure to determine [the] Plaintiff's mental abilities in formulating the RFC is legal error."). The ALJ's

16

failure to consider Johnson's mental impairments and abilities in assessing her RFC is legal error. Accordingly, the ALJ's decision is reversed and remanded.

**E. Remaining Findings and Conclusions**

Because Johnson's remaining contentions, (Dkt. No. 9 at 20-22, 23-25), may be impacted by the subsequent proceedings directed by this Order, it would be improper for the court to consider them at this juncture.

## VII. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 21, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

17